Jerry E. Martin #42247-008
840 West University Dr. Ste. 10
Mesa, Arizona 85201

IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA



JERRY EMERSON MARTIN,

    PLAINTIFF,

V.

J.T. SHARTLE, WARDEN FCC TUCSON,
LIEUTENANT DRIVER, SHU LT.,
JOHN DOE MEDICAL STAFF 1-20,
JOHN DOE BUREAU OF PRISONS STAFF 1-20,
ET, AL,

    DEFENDANTS.

Civil Case No. CV18-290TUC RM-PSOT

**Civil Rights Complaint**
per 28 U.S.C. § 1331 and
*Bivens v. Six Unknown Named*
*Agents of Federal Bureau of*
*Narcotics*, 403 U.S. 388 (1971)

**COME NOW,** Jerry E. Martin, hereinafter "Plaintiff" appearing *pro se* with a liberal construction of a Civil Rights Complaint. *Pro se* pleadings are to be construed liberally **Estelle vs. Gamble**, 429 U.S. 97,106 (1976).

### A. JURISDICTION

Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and *Bivens.*

### SUMMARY OF ARGUMENT

Plaintiff has been waiting for over 3½ years to have several medical surgeries done to repair Injuries suffered at the Federal Correctional Complex UNICOR factory on December 24, 2014, in addition to injuries sustained by Bureau of Prisons (B.O.P.) employees on April 12, 2017. During this time Plaintiff had unwarranted and extensive delays caused by numerous individuals and

[1]

entities. Beyond the normal issues of Inmate Accident Compensation, and future limitations due to these injuries, Plaintiff was unconstitutionally held in a Special Housing Unit (SHU) between the months of October 21, 2016 and November 22, 2017 that caused further injury both physically and mentally.

During the 397 days held against his will in the Special Housing Unit (SHU), Plaintiff was threatened both verbally, then, physically and received documented physical injuries that still have not been addressed. Plaintiff is now 53 years old and will be reentering society with many medical issues unresolved due to the blatant assault, abuse, and treatment leaving him unemployed due to pending doctor appointments, tests and surgeries.

Plaintiff, tried the entire time to follow the established protocol set forth by the B.O.P. itself, but was unsuccessful, not because of his efforts, but because of the illegal maneuvering of those at the B.O.P. Tucson, AZ. Complex to cover up what transpired against Plaintiff.

Plaintiff's numerous attempts to file the proper Administrative Remedies, Legal Mail seeking assistance; even letters to the Office of Internal Affairs pertaining to assault were conveniently ignored, misplaced, or thrown away by those employed at the FCC Complex in an attempt to stop Plaintiff's proper legal recourse.

### B. PARTIES

1. **Plaintiff:** This complaint alleges that the constitutional and civil rights of Plaintiff, Jerry E. Martin, (#42247-008) who now resides at 840 West University Dr. Ste. 10 Mesa, Arizona 85201, were violated by the actions of the below named individuals, causing bodily harm among other injuries, leaving him unable to be employed. The actions were directed against Plaintiff at the Federal Correctional Complex (F.C.C.) Special Housing Unit (SHU) located at 9300 South Wilmot

[2]

Rd. Tucson, Arizona 85756 on and between the dates of October 21, 2016 and November 22, 2017 to present date.

2. <u>Defendants</u>:

Defendant J.T. Shartle is the Warden of the Federal Correctional Complex (FCC) located at 9300 South Wilmot Rd. Tucson, Arizona 85756. This Defendant is sued in his individual and official capacity, and acted under the color of state and federal law. He is responsible for the running of the aforementioned F.C.C., the administrative, medical and Bureau of Prisons staff employed there; the assured rights of due process and medical needs for the welfare of all inmates housed within.

Defendant Lieutenant (Lt.) (first name unknown) Driver is the FCC USP Special Housing Unit (SHU) Lt., located at abovementioned address. He is personally responsible for the assault against Plaintiff causing bodily injuries requiring surgery before Plaintiff is able to work. (Surgeries have been scheduled). Further, he is responsible for creating fabricated documents against Plaintiff, which after review of camera footage, were expunged by Disciplinary Hearing Officer (DHO). Assault has been logged with the Office of Internal Affairs. Defendant Driver is sued in his individual and official capacity and acted under color of state and federal law. He is responsible for subordinate correctional officers in SHU that participated in assault.

Defendant(s) John Doe 1-20 Medical Director and Coordinator are responsible for Federal Bureau of Prisons medical department to assure timely and adequate medical care to inmates housed within the FCC and is under direction of Defendant Shartle. Defendant(s) John Doe 1-20 Medical Staff are sued in their individual and official capacity and acted under color of state and federal law through providing constitutionally inadequate and untimely medical care to Plaintiff.

[3]

Defendant(s) John Doe 1-20 Bureau of Prisons Staff (BOP) are under the direction of either Defendant Shartle (Warden) or Driver, (SHU Lt.), and were involved in the assault, mail tampering, and other civil right violations that took place against Plaintiff causing bodily harm, and hindering Plaintiff's legal recourse. Defendant(s) John Doe 1-20 BOP Staff are sued in their individual and official capacity and acted under color of state and federal law.

## C. CAUSE OF ACTION

### COUNT 1
### BUREAU OF PRISONS PROVIDED CONSTITUTIONALLY INADEQUATE MEDICAL CARE TO PLAINTIFF

On December 24, 2014, Plaintiff was severely injured while working at the FCC UNICOR facility in Tucson, Arizona, resulting in both shoulders and arms having their rotator cuff, as well as bicep tendons torn. (See Exhibit "A" pgs. 1-5). Plaintiff waited over 33 months to have surgery to address these matters. Plaintiff, to this very day, still has not received proper or punctual treatment to fix his multiple medical related injuries. Plaintiff spent the entire time in the SHU imploring both Defendant(s) John Doe Medical Staff and Defendant J.T. Shartle (Warden) to facilitate adequate and timely medical treatment prior to his release. Plaintiff has only found delays, no follow up and lack of concern for his well being. (See Exhibit "B" pgs. 1-10). Not only have the Plaintiff's initial injuries been delayed beyond what would be considered reasonable they have been diagnosed and documented needing immediate treatment by Tucson Medical Center (TMC) medical personnel. Plaintiff has since, received multiple other medical injuries that still have not been treated and cause him great pain and discomfort as well.

On April 30, 2018, Plaintiff was released from the halfway house with pre-existing medical

[4]

conditions and is currently unemployed because of injuries sustained, during the April 12, 2017 assault, and October 4, 2017 black out while in the SHU. Since his release, Plaintiff has had fourteen (14) doctors' visits and is scheduled to have carpal tunnel surgery – caused by assault - to correct numbness in both hands in July of 2018. Plaintiff is scheduled for orthopedic evaluation on June 23, 2018 for assault and other injuries that occurred while in the SHU. Defendant(s) should have provided adequate and timely medical care and treatment to address each medical injury Plaintiff sustained during this time, enabling him to seek gainful employment upon release.

## COUNT 2
## PLAINTIFF WAS DENIED PROPER ACCESS TO INCOMING AND OUTGOING MAIL HINDERING LEGAL RECOURSE

During Plaintiff's illegal detention in the SHU, which started on Oct. 21, 2016 and ended on Nov. 22, 2017, he had his mail, including legal and BOP Administrative Remedies "Special Mail" tampered with to disallow communicating to the proper authorities.

On Nov. 21, 2016, Plaintiff made the initial effort through BOP's required Informal Resolution. This Administrative Remedy was directed to Defendant J.T. Shartle, claiming unlawful detention in the SHU and that Plaintiff was being held without any violation code or lock-up order. Defendant Shartle refused to answer Informal Resolution, therefore, subsequent and progressive BP-9 Administrative Remedies – directed to him – were sent on Dec. 23, 2016 and Jan. 21, 2017, all of which went unanswered.

Plaintiff, in efforts in seeking relief from the SHU, sent a note back to the Satellite Prison Camp with an inmate returning to the camp, requesting another inmate file a motion to the United States District Court claiming Defendant J.T. Shartle's refusal to respond to Administrative Remedies, Due Process violations, illegal detention in the SHU without any type of violation code or lock up

[5]

order, Case No. **CV17-0106 TUC RM BPV**. A $5.00 application fee was requested by the U.S. District Court, however, even though Plaintiff filled out the application to have the $5.00 sent from his account, application fee was never received by the Court, and the motion was dismissed without prejudice on June 6, 2017. (See Exhibit "C" pgs. 1-12).

On April 19, 2017, one week after assault, Plaintiff had a confidential interview with investigating SIS officers regarding Defendant Lt. Driver's assault. During the interview, Plaintiff explained that he was going to file an official complaint with the Office of Internal Affairs and Sensitive BP-10 Administrative Remedy pertaining to the assault. Plaintiff explained that he had the letter to the OIA's office and a Sensitive BP-10 in his property and was going to send it out with his Case Manager or Counselor on their next SHU walkthrough.

On April 20, 2017, Plaintiff placed the letter to OIA's office and Sensitive BP-10 Administrative Remedy in Case Manager, E. Romero's, hand with correct postage applied. Case Manager Romero left Plaintiff's cell door to talk with other camp inmates in the SHU. Plaintiff was then removed from his cell by two SHU officers and taken to a cell at the end of E-range and all his paper work in his cell was gone through. Case Manager Romero spoke with officers during the search, and returned to the cell Plaintiff was moved to holding the two letters up to the window and said "their looking for these" and further stated "if I hadn't seen it with my own eyes I would have never believed you" and went on the say "I'll make sure to get these mailed". (Incident can be viewed on SHU camera footage on aforementioned date. E-Range between 10am and 12am). Complaints to OIA's office and Western Region were never received and once Plaintiff threatened to file charges against Case Manager Romero letters were allegedly found 10-weeks later in the FCI mailroom. Plaintiff was assured they had been mailed again, but again, they were never received.

Plaintiff's federal rights of not having his mail tampered with have been severely violated. Not once in the 13 months, and multiple attempts, of placing documented "Special Mail" to be delivered to the correct authorities has one piece ever been acknowledged receipt of receiving; except for the last Sensitive BP-10 Plaintiff mailed out on 11-21-17 – the day before he was transferred to SPC Schuylkill, PA – which was denied by the Western Region stating: "You must first file a BP-9 request through the institution for the Warden's review and response before filing an appeal at this level". (See Exhibit "D" pgs. 1-4).

Plaintiff has well documented the various dates and attempts of mailing out legal pleadings in regards to the assault on Plaintiff, excessive detention in the SHU, and the failure to get adequate and timely medical attention among other things. Even outgoing mail that was documented by those sending it to Plaintiff has witnessed many pieces never being delivered.

## COUNT 3
### PLAINTIFF SUFFERED SEVERE UNPROVOKED BODILY INJURIES FROM BOP STAFF

On April 12, 2017, Plaintiff was the victim of a cruel and unprovoked assault by Defendant Driver and Defendant(s) John Doe(s) BOP Staff. The Plaintiff at the time of the assault was restrained with his hands and arms behind his body and secured with black box cuffs. Defendant Driver and adjoining officers not only bodily slammed Plaintiff face first into the concrete floor, but wrenched his arms so far backwards that it re-tore Plaintiff's newly repaired rotator cuff.

Due to the force and unrestrained fall to the floor, Plaintiff also damaged his left clavicle and a complete ACL tear in his left knee. This was documented in one of the rare medical evaluation by the BOP's MLP Archeletta. Plaintiff then was bound and restrained and placed in a room on a concrete slab for 18-hours without standard video recording and received further brutality, which resulted in Plaintiff needing carpal tunnel surgery on both wrist and receiving facial bruises. (See

[7]

Exhibit "E" pg. 1 & 2). On April 12, 2017 after the assault, Defendant Driver wrote a forged government document in the form of a BOP incident report, #2974602, to misrepresent the reasoning for Plaintiff's bodily harm.

On May 5, 2017, incident report #2974602 was expunged by the Disciplinary Hearing Officer (DHO) after her review of the camera footage of the incident and stated during the hearing: "No evidence to support inmate lunged or attempted to head butt staff member". (See Exhibit "F"). Therefore, the whole incident was recorded and Plaintiff was found completely innocent of any wrongdoing or provocation to be attacked and assaulted as he was in the first place.

Not only was Plaintiff's eighth Amendment Rights violated, specifically with regards to cruel and unusual punishment, but various other rights both civil and criminal were violated at this time as well. Plaintiff has suffered real physical injuries to his body as well as his mental state and is still waiting to receive medical treatment to alleviate his pain and suffering.

## COUNT 4
### PLAINTIFF'S EIGHTH AMENDMENT RIGHTS WERE VIOLATED UNDER "CRUEL AND PUNISHMENT" AND "DUE PROCESS" FIFTH, SIXTH, AND FOURTEENTH

Plaintiff was confined against his will for an excessive amount of time in a maximum security Housing unit. On October 25, 2016 a "Medical Hold – Do Not Transfer" was placed on him by Defendant Shartle and Defendant(s) John Doe Medical Staff to justify his illegal detention in the SHU and to prolong his medical needs. (See Exhibit "G" pg. 1). For over 13 months, Plaintiff was illegally held in the SHU, even-though numerous attempts were made by the Plaintiff in remedying this problem thru the proper recourse. The BOP staff involved have done everything they could do to prevent Plaintiff's legal recourse.

Plaintiff's BOP custody classification is at the lowest possible designation, "out custody or community custody". It also reflects that the Plaintiff is no risk to the public and has no violence in

his history. The SHU is for punishment or for the very short hold over for further movement of those housed. It is not designated to illegally detain somebody who is not officially charged or sanctioned with a crime or BOP violation code infraction.

Plaintiff has followed every Bureau of Prisons Policy to remedy things but was stonewalled at each step along the way. The United States Supreme Court as well as recently the 9th Circuit has taken a very dim view on those incarcerated to be retaliated against when completely innocent of wrong doing.

Plaintiff was involuntarily pulled out of the BOP camp in Tucson, AZ. on Oct. 21, 2016 and illegally detained in the SHU until Nov. 22, 2017, and during this time, numerous civil rights afforded to both free and incarcerated alike have been either breached or violated.

Plaintiff had less than six months before his absolute discharge date, and Defendant(s) lifted the "Medical Hold – Do Not Transfer" and shipped Plaintiff to Satellite Prison Camp in Schuylkill, PA., without being properly evaluated by Northwest's Medical Center's Dr. Cooley for injuries sustained during Plaintiff's Oct. 4, 2017 blackout (due to dehydration as determined by TMC medical staff), as directed by TMC doctors. Plaintiff was made aware prior to being shipped that his right elbow and wrist were fractured during the blackout spell, however, Plaintiff was shipped anyway which only added to his physical and mental suffering he's been put through.

### D. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF SOUGHT

Plaintiff has not filed any other lawsuits in state or federal courts dealing with the same or similar facts involved in this case. Plaintiff previously sought to exhaust all forms of available relief from the proper administrative officials regarding the acts stated above. Plaintiff's last attempt to file a proper administrative remedy was at Schuylkill, PA. where his efforts, again, were ignored and

unanswered. As stated above, Plaintiff has made every effort possible to seek some type of administrative relief. (See Exhibit "H" pg. 1).

## CONCLUSION

Plaintiff wishes to lodge this civil complaint because of the abuse and violations of his God given rights under our constitution and laws of the United States. Plaintiff has been purposely targeted, lied to and been both physically and mentally abused on many different levels.

Plaintiff's constitutional rights guarantee that one will get prompt and comprehensive medical treatment when needed. Our laws protect individuals from physical injuries from unwarranted attacks and police brutality. Plaintiff has been trying unsuccessfully to have his many medical problems that require surgery done from day one.

For whatever reason, the Bureau of Prisons, along with numerous individuals have unconstitutionally denied Plaintiff from every right he has. Fortunately, the Plaintiff has supporting documentation that will corroborate his claims. Plaintiff seeks full medical treatment, monetary damages for the bodily attack upon him, cruel and unusual punishment for illegal and unwarranted detention in a maximum-security facility, and physical and emotional duress. In addition monetary damages to unspecified medical injury losses that pertain to loss of income both presently and future.

The officer Plaintiff was placed in the SHU for in hopes of gaining information regarding the officer signed a plea agreement and did no jail time what so ever while Plaintiff spend 397-days in the SHU and was assaulted, receiving injuries both physical and metal. (See Exhibit "I" pgs. 1-4). Plaintiff along with any human being should never have to go through what he has faced. Laws are put in place to prevent these types of abuse. Plaintiff has only tried to ask for what were his rights

[10]

throughout these past years. The BOP administration feels that the laws do not pertain to them and therefore are above the law. Thereby, Plaintiff must seek justice through this court.

**E. REQUEST FOR RELIEF:** Plaintiff requests that this Court grant the following relief:

1. Damages in the sum of $ <u>Amount to be determined by jury trial</u>,

2. Punitive damages in the sum of $<u>Amount to be determined by jury trial</u>,

3. Other: <u>That the state of Arizona's AHCCCS program be reimbursed fully through the BOP for ALL of Plaintiff's medical care due to assault and untimely and inadequate medical care.</u>

**F. DEMAND FOR JURY TRIAL:** Plaintiff demands a trial by jury.

**G. CONSENT TO MAGISTRATE JUDGE JURISDICTION**

Plaintiff gives his consent to proceed with a Magistrate Judge under 28 U.S.C. 636(c), thus waiving His right to proceed before a district court judge.

Respectfully submitted this __11__ day of __June__, 2018.

_Jerry E. Martin_
JERRY E. MARTIN, Plaintiff

**DECLARATION**

I, Jerry E. Martin, hereby declare that the above statements, facts, and claims are true and correct on this __11__ day of __June__, 2018 under the Penalty of Perjury.

_Jerry E. Martin_
JERRY E. MARTIN, Plaintiff

[11]